SHAWN N. ANDERSON
United States Attorney
ALBERT S. FLORES, JR.
Assistant United States Attorney
P.O. Box 500377
United States Courthouse, Second Floor
Saipan, MP 96950
TEL:   (670) 236-2980
FAX:   (670) 236-2985

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **LIANG YANG,** <br><br> Defendant. | Criminal Case No. 1:23-cr-00027 <br><br> **THE UNITED STATES' BRIEF IN SUPPORT OF DETENTION PENDING TRIAL** <br><br> Date:   October 12, 2023, 3:30 p.m. <br> Judge:  Heather L. Kennedy |

1  The United States of America, through undersigned counsel, Assistant U.S. Attorney

2  Albert S. Flores, Jr., submits its brief in support of pretrial detention of Defendant, Liang YANG

3  ("Defendant"), pursuant to Chapter 207 of Title 18, United States Code.

4  **Procedural Background**

5  On September 28, 2023, a criminal complaint was filed with this Court against Defendant,

6  alleging Count One: Conspiracy to Possess Methamphetamine with Intent to Distribute, under 21

7  U.S.C. §§ 846 and 841(a)(1). ECF No. 1.  On the same date, the Chief Judge of this Court issued

8  an arrest warrant for Defendant upon finding of probable cause that Defendant committed the

9  offense alleged in the criminal complaint. ECF No. 2.  On September 29, 2023, the Government

10 filed a motion for order of detention of Defendant pending trial, and an initial appearance was held

the same day. ECF No. 3.

On October 5, 2023, a grand jury returned an Indictment, alleging Count One: Conspiracy to Possess Methamphetamine with Intent to Distribute, under 21 U.S.C. §§ 846 and 841(a)(1). ECF No. 10.  On October 6, 2023, Richard C. Miller, Esq., withdrew as counsel of record for Defendant, citing a nonwaivable conflict of interest pursuant to Rule 1.7 of the Model Rules of Professional Responsibility. ECF No. 11.[1]  A detention hearing was scheduled for Defendant on October 11, 2023, at 3:30 p.m., but typhoon conditions forced the Court's closure and a pending rescheduling of the detention hearing.  What follows here, is the Government's brief in support of its motion for order of detention pending trial.

**Statement of Facts**

To support its motion for detention, the Government relies upon facts contained in the affidavit submitted by Drug Enforcement Administration (DEA) Special Agent (SA) Kirk Johns with the criminal complaint. ECF No. 1.

The Government also relies upon Attachment 1 to this brief, submitted under seal. Attachment 1 is report authored and signed by DEA Task Force Officer (TFO) Raymond M. Renguul on July 6, 2023.  In this report, TFO Renguul describes his encounter with Defendant on July 1, 2023, at the United States Post Office in Chalan Kanoa, Saipan.  TFO Renguul notes in this report, Defendant was at the post office to receive a package sent by ("CY").  CY is known to investigators as a person who facilitates trafficking of parcels containing methamphetamine within the mail system, from the mainland U.S. to Saipan.  In the same report, TFO Renguul notes Defendant claimed to have a relationship with ("DQ"), whose post office box Defendant was using

---

[1] As of this filing, appointment of a Criminal Justice Act (CJA) attorney for Defendant, to replace Mr. Miller, is pending.

to receive packages sent to Saipan by CY. DQ is known to investigators as a person involved with narcotics trafficking on the island of Saipan.

The Government also submits Attachment 2, under seal. Attachment 2 is a report authored and signed by TFO Renguul on September 28, 2023. In this report, TFO Renguul summarizes statements made by Defendant to investigators following Defendant's arrest on September 27, 2023. Several statements made by Defendant warrant the Court's attention at this juncture. First, Defendant claims he was invited by Imperial Pacific International (IPI) to come to Saipan and introduce VIP guests to games at the casino. This indicates Defendant's connection to persons of wealth, and Defendant's own social status amongst IPI VIPs. Second, Defendant acknowledges his relationship to ("BT"), a person known to investigators as a notorious drug trafficker on Saipan and Guam. Regarding the incident leading to Defendant's arrest, Defendant states he agreed to receive a package sent by BT to make some money. Defendant admits there is drug evidence in the parcel he picked up on the day he was arrested, and a similar package was to arrive within the next two days. Defendant admitted to having the tracking number for the second inbound package (of note, a second package arrived on September 28, 2023, with four similar lanterns containing methamphetamine, like the four lanterns in the first package described in [ECF No. 1]).

Lastly, the Government submits Attachment 3, under seal. Attachment 3 is an E-mail exchange between undersigned counsel and TFO Renguul. The E-mail summarizes an interview conducted by DEA investigators and undersigned counsel with ("XG") on October 6, 2023. In this interview, XG states Defendant is friends with BT, and that Defendant previously lived in a residence owned or leased by BT. XG further explains that a situation when police were actively looking for BT on Saipan, affected Defendant's ability to fulfill a debt payment to XG. These facts support Defendant's own claim, that Defendant maintains a relationship with BT, a notorious

local drug trafficker who remains a fugitive from justice.

### **Presumption Against Bail**

The Indictment returned by the grand jury [ECF No. 10], constitutes probable cause that Defendant committed the offense of Conspiracy to Possess Methamphetamine with Intent to Distribute, under 21 U.S.C. §§ 846 and 841(a)(1). The probable cause determination in this case triggers a rebuttable presumption under the Bail Reform Act that detention is appropriate. 18 U.S.C. § 3142(e). Defendant bears the burden of overcoming the presumption by producing evidence to the Court that Defendant is neither a flight risk nor a danger to the community. Whether to detain Defendant as a flight risk pending trial is a decision made by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).

The Bail Reform Act sets out several factors the Court should consider in reaching this decision, taking into account all available information: (1) the nature and circumstances of the offense charged, including whether it is a crime of violence or drug offense; (2) the weight of the evidence against the defendant; and (3) the history and characteristics of the defendant, including ties to the community, past conduct, and employment history. 18 U.S.C. § 3142(g). Taking each of these factors into account, this Court should find that the preponderance of the evidence shows the defendant is a flight risk, and that no condition or set of conditions could reasonably assure Defendant's appearance for criminal proceedings in this Court.

### **Nature and Circumstances of the Offense Charged**

The single count of Defendant's Indictment carries a potential penalty upon conviction of a maximum incarceration sentence of twenty (20) years imprisonment; a maximum fine of $1,000,000; not less than a 3-year term of supervised release; restitution; and a $100.00 special penalty assessment. The gross weight of the four lava lamps containing methamphetamine in the

parcel possessed by Defendant [ECF No. 1], is approximately 2,700 grams. Given the hazardous nature of liquid methamphetamine, a special chemical laboratory team is required to travel to Saipan to complete full forensic analysis of the seized lava lamps. However, given the gross weight of 2,700 grams of the four lava lamps specified in [ECF No. 1], the Government anticipates the weight of methamphetamine in Defendant's case will be at least 1.5 kilograms. Under U.S.S.G. § 2D1.1(a)(5) & (c)(4), Defendant's base offense level would be 32. With a Criminal History Category of I, this results in a guideline sentencing range of 121-151 months. The potential significant incarceration for Defendant upon conviction, even with reductions to form a reduced adjusted offense level, generates an incentive and inherent risk Defendant would not return to face criminal proceedings if released prior to trial.

### **Weight of the Evidence**

While the weight of the evidence has the least force in the Court's analysis for bail determination (*Bell v. Wolfish*, 441 U.S. 520, 533 (1979)), weight of the evidence is still a factor for consideration under 18 U.S.C. § 3142(g). Here, the weight of the evidence against Defendant is compelling.

The affidavit submitted by SA Johns lays out some of this evidence. ECF No. 1. Of particular significance:

- Defendant was in actual possession of a parcel that contained approximately 2,700 grams of methamphetamine prior to interception of the narcotics by customs agents. Possession of this amount of methamphetamine is not consistent with personal use.

- The four lava lamps seized on September 27, 2023, containing approximately 2,700 grams of methamphetamine, has an approximate street value on the island

of Saipan of more than one-million dollars ($400 per gram).  Given this street value, it is highly unlikely that a narcotics trafficker, such as BT, or CY, would entrust an unknown, or uninvolved person, to receive this much product for handling and distribution.  The risk of profit loss would otherwise be too great.

- Defendant made multiple attempts to inquire or retrieve the parcel.  This is behavior consistent with a person expecting a package of significant importance – such as a package containing more than one-million dollars' worth of methamphetamine.
- Upon arrest, Defendant claimed he was tricked into accepting a package with drug evidence.  However, Defendant made this admission prior to DEA agents confronting Defendant in the interview, that drug evidence was found in a package possessed by Defendant.
- Defendant admits to his relationship with a known, notorious drug trafficker, BT.  Further, Defendant admits that he agreed to receive a package from BT, for payment.
- Defendant admits to his relationship with CY and DQ, also known drug traffickers.

**Characteristics of Defendant**

Defendant is a citizen of the People's Republic of China (PRC) and does not have lawful immigration status in the United States or the Commonwealth of the Northern Mariana Islands (CNMI). Defendant made five separate entries into the CNMI under the tourist Conditional Parole Program, with the last entry being on 1/18/2019, and parole expiring on 1/30/2019. Defendant has overstayed Conditional Parole and lived on Saipan permanently for the last four years and eight

months, all without maintaining lawful employment in the CNMI. By his own admission, Defendant traveled to the CNMI to become an investor in a tourist company, which is a clear violation of permitted entry to the CNMI pursuant to the Conditional Parole Program.

Despite no lawful immigration status, Defendant acquired CNMI driver licenses on at least three occasions, to include at least two licenses from Saipan and one license from Rota. Investigators are aware Defendant makes a living, in part, by providing a shuttle service as a driver for visiting tourists from the airport and other places on Saipan. This shuttle service is provided while Defendant relies upon unlawfully issued driver licenses from the CNMI Bureau of Motor Vehicles (BMV). Defendant's ability to live on Saipan for four years unlawfully, and operate a tourist company unlawfully, is a clear indicator he has the ability and network to remain undetected and avoid encounters with law enforcement.

Persons such as Defendant without lawful immigration status, and who maintain a stream of unlawful income on Saipan, do not maintain monetary accounts with United States financial institutions. Instead, persons such as Defendant, rely upon cash dealings and their networks to transfer money via foreign cash applications such as WeChat. This is relevant because the Court in its analysis for flight risk, will surely inquire into Defendant's financial means to flee the island of Saipan. This Court should keep in mind, while Defendant reports he has limited to no assets, this is not a true representation of Defendant's financial means.

How could Defendant purchase a vehicle on Saipan valued at more than $1,000 without use of U.S. financial institutions?... because he deals in cash. Defendant is a narcotics trafficker, with admitted connections to VIP customers of the IPI casino. Thus, Defendant does have access to money and a network to pay smugglers on the black market to avoid criminal prosecution in this Court. Such is the case for Defendant's friend, BT, a fellow narcotics trafficker and wanted

fugitive who Defendant admits, is now on Guam.

Defendant has clearly demonstrated his disregard for the laws of the CNMI and the United States of America. Most evident by the fact that there are four active warrants for Defendant's arrest dating back to 2019. Not once, not twice, but four times, Defendant has been issued a traffic summons and subsequently failed to attend court proceedings. Further, Defendant's ability to acquire a CNMI license from the BMV even with active arrest warrants is alarming. This suggests Defendant's nefarious network includes not only fellow drug traffickers, but also corrupt government officials who would issue Defendant a license, notwithstanding his fugitive status and unlawful immigration status. This Court is well aware, considering other matters before this Court (*see i.e., United States v. Juana C. Leon Guerrero*, D. N. Mar. I. Case 1:23-cr-00007), this corrupt network is a plague to the CNMI.

Defendant's network of people is highly problematic when this Court considers Defendant's character for purposes of flight risk determination. Defendant maintains ties to family members in China, ties to known drug traffickers in China, and Defendant's local network is one of known drug traffickers. DQ, Defendant's friend who Defendant relies upon to receive packages, is involved in drug trafficking on Saipan. Defendant's associate, CY, is a known drug trafficker who facilitates the mailing of parcels containing methamphetamine to Saipan. BT, who Defendant says sent him the four lava lamps containing methamphetamine, is a drug trafficker.

## Conclusion

Considering the evidence, Defendant is staring at a conviction that will likely result in sentencing guidelines that start at 121 months. Given this significant period of incarceration, Defendant's ties outside the CNMI, his financial means, his nefarious network, if Defendant is released pretrial, he will be incentivized to flee. The use of a tracking bracelet can be cut with a

snip of scissors, and Defendant can hop on a boat to join his friend BT on Guam in no time.  Such a scenario would rob due process of a significant case that involves the trafficking of more than one-million dollars' worth of methamphetamine to the island of Saipan.

Thus, for the reasons stated *supra*, the Government respectfully moves this Court to maintain Defendant's detention.  At the hearing on this motion, the United States may advance additional reasons for detention, as the case proceeds and new information becomes available.

Respectfully submitted on October 12, 2023.

SHAWN N. ANDERSON
United States Attorney

By:   */s/ Albert S. Flores, Jr.*
ALBERT S. FLORES, JR.
Assistant United States Attorney